UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY JENKINS, | ) | CASE NO. 1:15CV1358 |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | GEORGE J. LIMBERT |
| | ) | |
| CAROLYN W. COLVIN[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION |
| SECURITY ADMINISTRATION, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

Plaintiff Jeffrey Jenkins ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF Dkt. #1. In his brief on the merits, filed on October 9, 2015, Plaintiff claims that the administrative law judge's ("ALJ") finding at step five of the sequential evaluation lacked the support of substantial evidence. ECF Dkt. #13. Defendant filed a response brief on December 7, 2015. ECF Dkt. #15. Plaintiff did not file a reply brief.

For the following reasons, the Court REVERSES the ALJ's decision and REMANDS the instant case to the ALJ for reevaluation consistent with the instant Memorandum Opinion and Order.

**I.      FACTUAL AND PROCEDURAL HISTORY**

On July 26, 2011 and August 9, 2011, Plaintiff filed applications for SSI and DIB, respectively. ECF Dkt. #10 ("Tr.") at 20.[2] In both applications, Plaintiff alleged disability beginning October 10, 2010. *Id.* Plaintiff's claims were denied initially and upon reconsideration.

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

*Id.* Following the denial, Plaintiff requested a hearing before an ALJ. *Id.* A hearing was held on September 30, 2013, but was concluded after the ALJ determined that he needed Plaintiff to be examined by an orthopedic specialist before rendering a decision. *Id.* at 53. A supplemental hearing was held on December 9, 2013. *Id.* at 20. Plaintiff testified at both the September 30, 2013 and December 9, 2013 hearings. *Id.* at 39-87.

On January 10, 2014, the ALJ denied Plaintiff's applications for DIB and SSI. Tr. at 17. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. *Id.* at 22. Continuing, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 10, 2010, the alleged onset date. *Id.* The ALJ then found that Plaintiff had the following severe impairment: history of fall from two-story scaffolding, resulting in a cervical spine injury, status post two back surgeries. *Id.* Next, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional limitations: simple, repetitive, and low-stress (low quota) work; occasional contact with the public, co-workers, and supervisors; a sit/stand option to alleviate discomfort; no reading or math requirements; no work around unprotected heights; no driving for work; occasional reaching overhead; frequent reaching in all directions; and frequent handling, fingering, pushing, and pulling. Tr. at 24. Continuing, the ALJ determined that Plaintiff was unable to perform any past relevant work, was a younger individual on the alleged disability onset date, and that Plaintiff had a limited education and was able to communicate in English. *Id.* at 26. The ALJ indicated that the transferability of job skills was not material to the determination because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Based on the above analysis, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 10, 2010, through the date of the decision. *Id.* at 27.

Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which was denied on June 5, 2015. Tr. at 6. At issue is the decision of the ALJ dated January 10, 2014, which stands as the final decision. On July 8, 2015, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. In his brief on the merits, filed on October 9, 2015, Plaintiff asserts that the ALJ's finding at step five of the sequential evaluation lacked the support of substantial evidence. ECF Dkt. #13. Defendant filed a response brief on December 7, 2015. ECF Dkt. #15. Plaintiff did not file a reply brief.

## II.     RELEVANT PORTIONS OF THE ALJ'S DECISION

Plaintiff's sole assignment of error challenges the ALJ's finding at step five of the sequential evaluation.[3] ECF Dkt. #13 at 8-11. The ALJ imposed a RFC finding limiting Plaintiff to sedentary work, with the following additional limitations: simple, repetitive, and low-stress (low quota) work; occasional contact with the public, co-workers, and supervisors; a sit/stand option to alleviate discomfort; no reading or math requirements; no work around unprotected heights; no driving for work; occasional reaching overhead; frequent reaching in all directions; and frequent handling, fingering, pushing, and pulling. Tr. at 24. In making the above RFC finding, the ALJ first stated that Plaintiff's alleged impairment was a broken neck. *Id.* The ALJ then indicated that Plaintiff stated that his impairment caused chronic pain throughout his body, and, in terms of functional limitations, that Plaintiff alleged difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, remembering, completing tasks, concentrating, following instructions, and using his hands. *Id.*

Next, the ALJ stated that three days after the two-story fall resulting in Plaintiff breaking his neck, Plaintiff underwent an interior discetomy and fusion at C6-7. Tr. at 25. The ALJ indicated that Plaintiff exhibited significant problems following his initial surgery and a subsequent computerized tomography ("CT") scan of Plaintiff's neck revealed a failed fusion at C6-7. *Id.*

---

[3]Both Plaintiff and Defendant properly kept their briefing focused on the limited, but important, issue that is the subject of the instant case. As such, a lengthy recitation of the portions of the ALJ's decision to which neither party raises objections would serve no purpose in adjudicating this matter. *See* ECF Dkt. #13 at 10-12; ECF Dkt. #15 at 8-10.

Continuing, the ALJ stated that following this testing, Plaintiff underwent a neurosurgical consultation resulting in a C5-6 cervical laminectomy with a C5, C6 and C7 fusion. *Id.* The ALJ noted that Plaintiff's follow-up care included use of a bone growth stimulator, the use of a transcutaneous electrical nerve stimulation ("TENS") unit, and medication. *Id.* A follow-up CT scan of Plaintiff's neck revealed a successful interval anterior fusion, mild stenosis at C5-6, borderline stenosis at C4-5, and no evidence of loosening or failure of hardware. *Id.*

The ALJ then discussed Plaintiff's follow-up treatment. Specifically, the ALJ indicated that Plaintiff consistently reported pain to palpation in the cervical region and limited range of motion in all areas, but no muscle spasms, tightness, or spinal deformities. Tr. at 25. The ALJ noted that the strength and range of motions in Plaintiff's upper extremities was normal. *Id.* Continuing, the ALJ stated that in May 2013 a physical examination confirmed ongoing pain to palpation in the cervical region with some muscle tightness and spasms, regular strength in the upper extremities, and no radicular pain. *Id.* The ALJ indicated that in August 2013 and October 2013, Plaintiff reported that his pain treatment plan was helping him complete his activities of daily living and become more physically active, as well as noting that Plaintiff stated his neck spasms were controlled with medication. *Id.*

Next, the ALJ stated that following the September 30, 2013 hearing, Plaintiff was scheduled for a consultative orthopedic examination. Tr. at 25. The ALJ indicated that the examining physician made clinical observations, namely that Plaintiff was able to: lift, handle, and carry light objects; squat and right himself from the squatting position with ease; move himself on and off the examination table without difficulty; walk without difficulty; and dress and undress adequately. *Id.* The ALJ also noted that the examining physician indicated that Plaintiff could not extend or flex his neck, and that a neurological examination was normal. *Id.*

After the discussion of Plaintiff' treatment, that ALJ stated that Plaintiff clearly struggled with pain and a limited range of motion in his neck, however, the objective medical evidence did not support a finding that Plaintiff would be unable to perform all types of work activity. *Id.* Rather, according to the ALJ, the objective medical evidence supported a finding that Plaintiff was limited to less than a full range of sedentary work, as described in the RFC finding. *Id.*

The ALJ next indicated that he gave little weight to the state agency medical assessments because the opinion of Olubusola Brimmo, M.D., was more consistent with overall objective medical evidence. Tr. at 26. Moving on, the ALJ stated that Dr. Brimmo opined that Plaintiff could: sit for eight hours in an eight-hour workday, but required the option of standing/walking every three hours; frequently reach, handle, finger, feel, and push/pull; occasionally reach overhead; never climb ladders or scaffolds, balance, or crawl; occasionally climb stairs and ramps, stoop, kneel, and crouch; occasionally work around moving parts; never work around unprotected heights. *Id.* Concluding his discussion of Plaintiff's RFC, the ALJ stated that he gave significant weight to Dr. Brimmo's opinion because it came from an acceptable medical source and was consistent with the objective medical evidence. *Id.*

Continuing, the ALJ determined that Plaintiff was unable to perform any past relevant work, was a younger individual on the alleged disability onset date, and that Plaintiff had a limited education and was able to communicate in English. Tr. at 26. The ALJ indicated that the transferability of job skills was not material to the determination because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* The ALJ then stated that he questioned a vocational expert ("VE") to determine the extent to which Plaintiff limitations eroded the unskilled sedentary occupational base by asking the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. *Id.* at 27. The ALJ then indicated that the VE testified that, given all of the factors, Plaintiff would be able to perform the requirements of the following representative occupations: addresser; document preparer; and touch-up screener. *Id.* The ALJ then accepted the VE's testimony and concluded that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. *Id.* Based on the above analysis, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 10, 2010 through the date of the decision. *Id.*

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found the plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (internal citations omitted)).

## V.    LAW AND ANALYSIS

In his sole assignment of error, Plaintiff avers that the ALJ's finding at the fifth step of the sequential evaluation lacked the support of substantial evidence. ECF Dkt. #13 at 8. In support of his position, Plaintiff argues that the ALJ found that Plaintiff was limited to work with no reading or math requirements when making the RFC determination, yet the jobs offered by the VE when asked whether jobs existed in significant numbers in the national economy that Plaintiff could perform, which the ALJ accepted in his decision, imposed reading requirements. *Id.* at 9-10. Plaintiff asserts that one of the occupations posed by the VE, document preparer, had a reasoning level of 3, a math level of 1, and a language level of 2 (*i.e.*, R3, M1, L2).[4] Plaintiff argues that since one of the occupations offered by the VE, document preparer, required the capability to perform consistent with R3, M1, L2, and the other two occupations offered by the VE required the capability to perform consistent with R2, M1, L2, the requirements of these occupations exceed Plaintiff's abilities and what would be contemplated in a job with no reading requirement. *Id.* Essentially,

---

[4]Dictionary of Occupational Titles, Appendix C: Components of the Definition Trailer §II formats the numeric assignment of reasoning, math, and language levels as "R#, M#, L#." This formatting is apparent when viewing any listed occupation. *See, e.g.*, Dictionary of Occupational Titles, Document Preparer, Code: 249.587-018, available at http://www.occupationalinfo.org/24/249587018.html )last visited August 26, 2016).

-7-

according to Plaintiff, the jobs cited by the VE as available in significant numbers do not match the ALJ's RFC finding or Plaintiff's abilities. *Id.* at 10. Further, Plaintiff asserts that the VE expert testified that if an individual could not read, which the ALJ found when imposing the no reading requirement, he could not perform any of the jobs cited. *Id.* In conclusion, Plaintiff avers that the ALJ failed to meet his burden at the fifth step of the sequential evaluation. *Id.*

Defendant contends that ALJ posed a hypothetical question to the VE that included all of Plaintiff's limitations supported by the record, and that the ALJ's RFC determination matched the limitations imposed and incorporated those limitations into the hypothetical question verbatim. ECF Dkt. #15 at 8. Continuing, Defendant asserts that a VE's testimony in response to the hypothetical question accurately reflecting Plaintiff's impairments constitutes substantial evidence. *Id.* Defendant argues that Plaintiff's argument fails for three reasons. The first reason proffered by Defendant is that Plaintiff inaccurately conflates the ALJ's no reading requirement with total illiteracy when neither the ALJ nor the VE made this equivalency. *Id.* at 9. Second, Defendant asserts that the record does not show that Plaintiff was unable to read, but, rather, shows that Plaintiff did not read for pleasure and struggled with reading comprehension. *Id.* Finally, Defendant argues that the ALJ accurately portrayed Plaintiff's reading abilities in his questions to the VE and that there is no support for Plaintiff's contention that the VE failed to account for the ALJ's limitation regarding reading and math. *Id.* at 9-10.

As an initial matter, the Court agrees with Defendant's first two assertions, namely, that: (1) the no reading requirement did not equate to total illiteracy; and (2) the record does not show that Plaintiff was unable to read. Plaintiff's claim that the inability to read was "for practical purposes equivalent to the ALJ"s restriction to 'no reading' requirements [sic]" is not well taken. ECF Dkt. #13 at 10. Defendant is correct that the record clearly demonstrates that Plaintiff is not illiterate, as evidenced by Plaintiff's own testimony, and the ALJ never made any indication that the no reading requirement was reflective of Plaintiff's total inability to read. *See* Tr. at 43, 44, 67, 78-79.

That being said, Plaintiff is correct in his assertion that despite making a RFC finding that Plaintiff was limited to jobs with no reading requirement, the ALJ relied on VE testimony offering jobs that imposed a reading requirements when determining that jobs existed in significant numbers

-8-

in the national economy that Plaintiff could perform. *See* ECF Dkt. #13 at 8-10. The VE testimony relied upon by the ALJ when making this determination indicated that Plaintiff could perform the following representative occupations: document preparer; addresser; and touch-up screener.

The occupation of document preparer is rated as R3, M1, L2, thus indicating that to perform the duties of the job an individual must be able to function at reasoning level 3, math level 1, and language level 2.[5] It should be noted that all three representative occupations are rated as math level 1. Plaintiff does not take issue with the math requirements of the occupations, presumably because math level 1 entails the ability to add, subtract, perform simple multiplication, and perform basic arithmetic operations, and nothing in the record suggests Plaintiff is incapable of these very basic computations. Reasoning level 3 requires that an individual be able to: (1) apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form; and (2) deal with concrete variables in or from standardized situations.[6] As such, the occupation of document preparer may require that Plaintiff be capable of understanding and carrying out instructions in written form, which would require Plaintiff to be capable of some level of reading comprehension. Language level 2 requires an individual to be capable of the following:

> Reading:
>
> Passive vocabulary of 5,000-6,000 words. Read at a rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Reading instructions for assembling model cars and airplanes.
>
> Writing:
>
> Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjective and adverbs.

*Id.* An occupation rated as language level 2 requires an individual to be capable of reading at a certain rate with at least some degree of understanding.

---

[5]Dictionary of Occupational Titles, Document Preparer, Code: 249.587-018, available at http://www.occupationalinfo.org/24/249587018.html (last visited August 26, 2016).

[6]Dictionary of Occupational Titles, Appendix C: Components of the Definition Trailer, available at http://www.occupationalinfo.org/appendxc_1.html (last visited August 26, 2016).

The occupations of addresser and touch-up screener are both rated at reasoning level 2, math level 1, and language level 2.[7] Defendant incorrectly states that the occupations of addresser and touch-up screener are both rated at reasoning level 1, math level 2, and language level 1. This presents cause for concern regarding Defendant's claim that Plaintiff is capable of performing the occupations presented by the VE as Defendant has assigned the incorrect level of functionality to each category insofar as the occupations of addresser and touch-up screener are concerned. *See* ECF Dkt. #15 at 10. In any event, and for the reasons provided in the instant Memorandum Opinion and Order, remand would be proper even if Defendant had correctly assigned the functionality required for an individual to be capable of performing the occupations of addresser and touch-up screener. Since the occupations of addresser and touch up screened are rated at language level 2, as was document preparer, the same concerns discussed above are present regarding to these occupations as well. Document preparer is rated at reasoning level 3, whereas addresser and touch-up screener are rated reasoning level 2. Reasoning level 2 imposes requirements similar to, but less demanding than, those of reasoning level 3. The requirements of reasoning level 2 are: (1) apply commonsense understanding to carry out detailed but uninvolved written or oral instructions; and (2) deal with problems involving a few concrete variables in or from standardized situations.[8] Like the occupation of document preparer, the occupations of addresser and touch-up screener require that Plaintiff be capable of understanding and carrying out instructions in written form, which would require Plaintiff to be capable of some level of reading comprehension.

The ALJ's RFC finding explicitly indicates that "there should be no reading or math requirements." Tr. at 24. Despite this finding, the ALJ found that Plaintiff was capable of performing jobs that existed in significant numbers in the national economy on the basis of three representative jobs that imposed reading requirements. The ALJ provided no explanation in his

---

[7]Dictionary of Occupational Titles, Addresser, Code: 209.587-010, available at http://www.occupationalinfo.org/20/209587010.html (last visited August 26, 2016); Dictionary of Occupational Titles, Touch-up Screener, available at http://www.occupationalinfo.org/72/726684110.html (last visited August 26, 2016).

[8]Dictionary of Occupational Titles, Appendix C: Components of the Definition Trailer, available at http://www.occupationalinfo.org/appendxc_1.html (last visited August 26, 2016).

decision of why he indicated that Plaintiff must not be subject to reading or math requirements, or discussion as to the extent of this limitation. *See* Tr. at 20-28. Moreover, the ALJ's decision did not address the inconsistency between his RFC and the three occupations offered by the VE, instead simply stating:

> [The ALJ] accept[s] the [VE's] testimony as credible because it is based on his professional experience, because it is generally consistent with the [Dictionary of Occupational Titles], because it is based on sources of data [the ALJ] consider[s] to be reliable even if and when it is not consistent with the [Dictionary of Occupational Titles], and because it is not contradicted.

Tr. at 27.

Additionally, the September 30, 2013 and December 9, 2013 hearing transcripts are replete with testimony indicating that Plaintiff has reading limitations. Plaintiff's testimony is presumably the source of the no reading requirement included in the RFC finding, however, the ALJ did not address the extent to which Plaintiff was limited in his ability to read beyond including an apparently total ban on work imposing reading requirements. Plaintiff provided testimony as to the fact that he had problems reading, likely associated with a learning disability, as demonstrated by the following:

> ... [upon questioning by the ALJ]
>
> Q: Do you take notes?
>
> A: As long as you can – as long as its pretty slow to where I can, you know, write it.
>
> ... [upon questioning by Plaintiff's counsel]
>
> Q: The [ALJ] asked you about writing. You said it would take a while. Why is that? What difficulty do you have with your –
>
> A: I lose track and I have a hard time concentrating.
>
> ... [upon questioning by the ALJ]
>
> Q: You look like were [sic] in some special education classes, is that correct?
>
> A: Yes.
>
> ...
>
> Q: Do you know if you had some special education classes or not?
>
> A: Honestly I don't recall.

> Q: Okay. You never did obtain your GED though, is that correct?
>
> A: No, I did not.
>
> Q: Okay. Can you do basic reading and writing?
>
> A: Yeah. I have a lot of trouble comprehending what I read –
>
> Q: Right.
>
> A: – on that note, you know.
>
> Q: Let me give you an example. If you get a letter from Social Security, do you read it yourself or someone else helps you with it?
>
> A: I try to read it, but generally I take it to my wife so she can break it down for me –
>
> Q: Okay.
>
> A: – into something I can understand.
>
> Q: Okay. Do you ever read for pleasure?
>
> A: No.
>
> Q: Okay. Do you read the newspaper?
>
> A: No.
>
> ...
>
> Q: Before your accident, before your accident, you know, unfortunately, but I'm speaking objectively, before that, you had a very limited education. You had reading deficits and you had learning deficits probably your entire life. And that's a fair statement, isn't it?
>
> A: Yes, sir.
>
> ...
>
> Q: Now I know and I appreciate that you don't, you know, read or write much, but you never really have; is that a fair statement? In other words, writing letters or reading books, magazines, newspapers –
>
> A: Not really, no.
>
> Q: Do you ever read a newspaper, say the sports page or anything like that?
>
> A: Occasionally I'll look at it, but as far as reading it or anything, not really.

Tr. at 43, 47, 51, 67-68, 72, 78-79.

The ALJ appeared to recognize that Plaintiff had reading comprehension problems at the hearings, and did recognize these problems in his RFC finding by explicitly limiting Plaintiff to work with no reading requirements. Yet, the ALJ then, without explanation, relied on three representative occupations that imposed reading requirements when determining that Plaintiff could perform jobs that existed in significant numbers in the national economy. Defendant has failed to meet her burden at the fifth step of the sequential evaluation. *See Moon*, 923 F.2d at 1181. Accordingly, the ALJ's determination that Plaintiff had the RFC to perform jobs that existed in significant numbers in the national economy was not supported by substantial evidence.

The ALJ determined in his RFC finding that Plaintiff was limited to jobs requiring no reading or math requirement. Upon remand, the ALJ must properly consider Plaintiff's age, education, work experience, and RFC, as already determined, when making a decision as to whether jobs existed in significant numbers in the national economy that Plaintiff could perform.

## VI. CONCLUSION

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS the instant case to the ALJ for reevaluation consistent with the instant Memorandum Opinion and Order.

Date: August 29, 2016        */s/George J. Limbert*
              GEORGE J. LIMBERT
              UNITED STATES MAGISTRATE JUDGE